LIBERTIN, Appellant, v. ST. PAUL FIRE & MARINE INS.
CO., Respondent

(54 N. W.2d 168)

(File No. 9278.  Opinion filed June 27, 1952)

Rehearing denied August 20, 1952

**Bellamy, Eastman & Christol,** Rapid City, for Defendant
and Appellant.

**H. F. Fellows,** Rapid City, for Plaintiff and Respondent.

LEEDOM, J.

■ Respondent, plaintiff below, agreed to sell to Mary Denker a 1949 Ford automobile on which appellant had issued a policy of insurance. Assignment of the insurance was not involved in the transaction. At the trial it was respondent's contention that the agreement to sell was conditional upon Miss Denker's approval of the car after driving it, while appellant contended that the negotiations that took place prior to delivery of the car to Miss Denker actually amounted to an absolute sale. Following the negotiations and on the same day they took place Miss Denker drove the automobile and wrecked it. After the accident respondent made a claim against appellant under the collision coverage of the policy. Appellant refused payment on the grounds that (1) respondent was not the owner of the car at the time of the accident and therefore had no insurable interest therein, and (2) suffered no loss because of payments made by Miss Denker. For the reasons hereafter appearing we hold that there is no loss under the policy insofar as this record discloses. Accordingly we reverse the trial court.

Most of the pertinent facts were stipulated. The stipulation provided for certain testimony of William Libertin, husband and agent of plaintiff. The only other testimony offered was that of Mary Denker taken by deposition.

■ Respondent acquired the automobile from a used car dealer on July 26, 1950 and the negotiations for the sale of the car to Miss Denker took place on August 17, 1950. On the latter date a certificate of title to the automobile had not been issued by the state of South Dakota to respondent, who had held the assigned certificate of a prior owner more than the ten days provided by SDC 44.0203 as amended without applying for a new certificate of title. Appellant contends that this failure to apply for a title in her own name within the statutory period technically prevents respondent from becoming the "owner" of the car for the purposes of insuring it and therefore renders the policy invalid. This contention appears to us to be lacking in substance.

In the negotiations between Miss Denker and respondent, who dealt through her husband and agent, William

Libertin, a price of $1525 was reached. Miss Denker examined the car at the Libertin home and found it satisfactory insofar as she could decide without driving it. She gave her check to respondent for $1325 on the price. She testified as follows: the car was then delivered to her by Mr. Libertin for a trial drive; if she decided after driving the car that it operated satisfactory the transaction would be deemed a sale; if she found the car was not satisfactory she could return it and get back her $1325 check which was not to be cashed immediately nor until the car was found satisfactory; at the time the car was delivered to her under these circumstances the certificate of title issued in the former owner's name and held by respondent was handed to Miss Denker by Mr. Libertin under the agreement that she would take the certificate to the licensing division in the office of the Secretary of State in Pierre where Miss Denker taught school and request that a new certificate of title be issued in the name of respondent so that respondent would be in a position to assign the title to the car; the title was in no event to be assigned to Miss Denker until the full price of the car was paid; she had driven the car about 20 miles only when it was wrecked and at that time she had not driven it far enough to decide and had not decided that it operated satisfactorily; the wrecked automobile and the old certificate of title were returned to the Libertins; the $1325 check was cashed after the accident and the proceeds were retained by respondent agreeably to Miss Denker who also within the next week paid to respondent by check an additional $200; when it was wrecked she was driving the car to her home intending to drive back later and advise Mr. Libertin if she found the car satisfactory; she never received any title to the automobile.

Mr. Libertin's testimony as stipulated was: that Miss Denker would get no title until full payment had been made; the old title was delivered to her so that transfer of title could be made upon full payment; the wrecked automobile was returned to respondent who has since had sole possession; the old certificate of title was also returned to respondent; at no time did anyone ever deliver a certificate of title to the automobile to Mary Denker.

It is undisputed that Miss Denker paid $1525 to respondent who has retained such payment; also that the damage to the car as reflected in a repair bill amount to $1203.45. The collision coverage of the policy provided for payment by the insured of $100 of the loss and so the judgment entered by the trial court was for the stated repair bill less the $100, that is $1103.45, plus costs.

On these facts the trial court found that the sale to Miss Denker was not completed and entered a conclusion of law that respondent was the owner of the car with full insurable interest at the time of the accident. Appellant's argument is persuasive that the circumstances tend to establish an agreement for an absolute sale in spite of Mary Denker's positive denial. We cannot say however that the record shows a clear preponderance of evidence against the finding of an incomplete sale as all of the circumstances on which appellant relies can quite reasonably be reconciled with the theory that Miss Denker was not completing payment of a purchase price after the accident but rather was paying for the damage she did to the car while testing it.

The record is silent as to the reason for payment of the $1525 except that payment of that sum as the price on a sale is negatived by the parties' contention and the court's finding that there was no sale.

If there was no sale then it must be assumed from this record that the $1525 was intended by Miss Denker as compensation for the damage she did to respondent's car.

Appellant's obligation under its insurance contract is to indemnify respondent against loss such as is here involved. The law however recognizes the principle that if insured recovers the loss from a source other than the insurer, the latter's liability is reduced to the extent of such recovery. The rule is a part of the development in the law that subrogates an insurer on this kind of policy to such claim as the insured may have against one who wrongfully caused the damage. A release of the one causing the damage by the insured relieves the insurer of liability and destroys the cause of action under the policy. The rule is stated thus in Auto Owner's Protective Exchange v. Edwards, 82 Ind.App., 558, 136 N.E. 577, 579: "* * * any payment as dam-

ages received by the insured from the wrongdoer, before settlement with the insurer, reduces, by operation of law, the liability of the insurer to the extent of the payment; and, where the insured releases his right of action against the wrongdoer before settlement with the insurer, that release destroys, by operation of law, his right of action on the policy." See cases there cited; also 29 Am.Jur., Insurance, § 1344 and 6 Blashfield, Automobile Law and Practice, § 4181.

Blashfield in a note to the cited section, p. 428, justifies the rule with this quotation from Auto Owners' Protective Exch., supra: " 'The wisdom of that rule is apparent. To permit the insured to receive payment from both the wrongdoer and the insurer would be to give him double compensation for his loss. The wrongdoer cannot be permitted to shield himself on the theory that the loss is covered by insurance, for the contract of insurance was not made for his benefit. Manifestly it would be unjust to compel the insurer to suffer the consequences of the wrongful act of another.' "

The facts presented by this record and the implications necessarily arising therefrom invoke these legal principles. While appellant's argument lays greatest stress on the proposition that ownership of the automobile had passed to Miss Denker at the time of the accident, this question as to whether or not respondent under the facts suffered damage or loss is raised in the pleadings and is adequately presented in the appeal through exceptions to the trial court's findings of fact and conclusions of law, through appellant's proposed decision and by appropriate assignments of error. Facts relating to the payment of the $1525 may be established in a retrial that will remove the case from the effect of the principles here announced but on the record presented we consider such principles controlling.

The judgment of the circuit court is reversed.

ROBERTS, RUDOLPH, and SMITH, JJ., concur.
SICKEL, P. J., dissents.